**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THOMAS PATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.-01-161C |
| | ) | (Judge Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

COMES NOW the Plaintiff, Thomas Patton, by and through counsel, and pursuant to the Court's Order of September 29, 2006, and paragraph 14(d) of Appendix A to the Rules of the United States Court of Federal Claims, hereby submits the following proposed findings of fact and conclusions of law with annotations to the exhibits and/or witness testimony on which the Plaintiff will rely, and with specific citations to Plaintiff's Exhibit 7 and Plaintiff's Exhibit 8.

1. On or about June 20, 1989, Thomas Patton, along with other persons, was arrested by the Federal Bureau of Investigation ("FBI") for criminal activities. Testimony of Thomas Patton ("Patton Testimony").

2. In late December 1989, Mr. Patton met with FBI Special Agents ("SA") Richard Leahy and Malynda Irby of the FBI's Miami, Florida office, to discuss the possibility of Mr. Patton cooperating with the FBI. Patton Testimony.

3. Shortly thereafter, in January 1990, Mr. Patton began cooperating with the FBI pursuant to an oral contract ("1990 Contract") to pay him a lump sum payment in

exchange for his work as a confidential witness against persons arrested on June 20, 1989. Patton Testimony.

4. On March 23, 1990 Mr. Patton signed a plea agreement with the United States in the case of United States v. Sam Frank Urbana, et al., Case No. 89-360-Cr-Davis, in the United States District Court for the Southern District of Florida, and subsequently continued to perform services for the FBI as a confidential witness. Patton Testimony.

5. On or about May 29, 1991, Mr. Patton entered into a written contract with the FBI ("1991 Contract") providing that in exchange for $3000.00 per month, Mr. Patton would assist the FBI in a specific criminal investigation regarding the interstate transportation of stolen property, racketeering, loan sharking, the operation of illegal gambling businesses, obstruction of justice, and other violations of U.S. law. 1991 Contract, listed as Plaintiff's Exhibit 1; Patton Testimony; Testimony of John Donohue ("Donohue Testimony").

6. The 1991 Contract stated that it could "be terminated at any time by either party by deliverance of written notice to terminate." 1991 Contract.

7. Accordingly, when the FBI terminated the 1991 Contract on August 5, 1993, it did so in a writing to "serve as written confirmation of the previous conversation between [Mr. Patton] and special Agents George Chmiel and Kent Cameron on July 29, 1993, where [Mr. Patton was] advised that [his] continued assistance and services under the . . . [1991 Contract] would no longer be required." Letter from the FBI to Thomas Patton, dated August 5, 1993 and signed on August 10, 1993, listed as Plaintiff's Exhibit 2 ("1991 Termination Letter"); Patton Testimony; Donohue Testimony.

8. Mr. Patton acknowledged receipt of the written termination by signing same on August 10, 1993, witnessed by SA George G. Chmiel for the FBI. 1991 Termination Letter; Patton Testimony; Donohue Testimony.

9. On the same day, Mr. Patton also signed a receipt for a lump sum payment of $25,000.00 as a bonus for his services related to the investigation contemplated by the 1991 Contract, stating that he had "been advised that the lump sum payment . . . represents a full and final settlement for services rendered." Receipt for Payment signed by Thomas Patton on August 10, 1993, listed as Plaintiff's Exhibit 3; Patton Testimony; Donohue Testimony.

10. Thereafter, on or about November 11, 1994, the FBI entered into an additional written contract with Mr. Patton ("1994 Contract") for Mr. Patton's assistance in obtaining information concerning multiple "investigations [the FBI was conducting] regarding the La Cosa Nostra (LCN) and Drug Trafficking and Money Laundering Organizations in various districts within the United States", including but not limited to Los Angeles, CA. 1994 Contract, listed as Plaintiff's Exhibit 4; Patton Testimony; Donohue Testimony.

11. The 1994 Contract, an ongoing services contract, provided that, in return for his services, the FBI would pay Mr. Patton $4,000.00 per month, plus $3,250.00 for expenses, although, consistent with the FBI's previous behavior, it compensated Mr. Patton in varied amounts so that he did not always receive a specific amount of money on the same day of each month. 1994 Contract; Patton Testimony; Donohue Testimony.

12. The 1994 Contract, like the 1991 Contract, stated that it could be "terminated at any time by either party by deliverance of a written notice to terminate." 1994 Contract.

13. From 1994 to 1996, Mr. Patton assisted the FBI in Los Angeles, CA with one of the investigations contemplated by the 1994 Contract ("Los Angeles, CA Investigation"). Patton Testimony; Donohue Testimony.

14. Mr. Patton was advised orally in February 1996 that the Los Angeles, CA Investigation was concluding. Telephone logs handwritten by Thomas Patton and Ruth Patton, listed as Plaintiff's Exhibit 7 ("Telephone Logs") (Patton 00069); Patton Testimony; testimony of Ruth Patton.

15. When the Los Angeles, CA Investigation ended, however, Mr. Patton was not advised – either orally or in writing – that the 1994 Contract was being terminated. Patton Testimony.

16. As the 1994 Contract contemplated investigations in "various districts within the United States", and required written notice in order for the contract to be terminated, the conclusion of the Los Angeles, CA Investigation did not release Mr. Patton from his duties as a confidential witness to the FBI, nor did it release the FBI of its obligation to compensate Mr. Patton. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (the scope of a written agreement must be discerned within its four corners, and the instrument must be construed as written); *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed. Cir. 1999) ("The interpretation of the (settlement) agreement must be based, not on the subjective intentions of the parties, but on the objective words of their agreement."); *but cf. Kraemer Mills, Inc. v. United States*, 162 Ct. Cl. 367, 319 F.2d 535 (1963) (finding a contract terminated where (1)

written notice of termination was not explicitly required by the contract, (2) the plaintiff notified the government that it was no longer able to fulfill its obligations under the contract, and (3) plaintiff performed no further work for the government); 1994 Contract; Patton Testimony; Donohue Testimony. Here, Mr. Patton was not given written notice of termination, nor did he notify the FBI that he was no longer able to fulfill his obligations under the 1994 Contract, nor did fail to perform additional work for the FBI. Patton Testimony; Donohue Testimony; Telephone Logs (Patton 00059, 60, 63, 64, 66, 72-73, 74, 78, 79, 80, 81-82, 83, 84, 85, 92, 93-94, 101, 109, 134, 136, 150, 151, 152, 154, 155, 219).

17. Accordingly, the FBI paid Mr. Patton $5600.00 on February 15, 1996, and in late February 1996, when Mr. Patton moved from Los Angeles, CA to Dallas, TX, the FBI paid for his moving expenses in accordance with its obligations under the 1994 Contract. Patton Testimony.

18. Mr. Patton relocated to Dallas after the FBI contacted the Dallas FBI division to set up more undercover work for Mr. Patton under the 1994 Contract, and advised Mr. Patton that the 1994 Contract would remain in effect there. Patton Testimony; Telephone Logs (Patton 00068, 115, 120, 125-26, 147).

19. Immediately after he relocated to Dallas, in March 1996, Mr. Patton met with FBI agents regarding ongoing FBI investigations, and subsequently continued to work for the FBI under the 1994 Contract, although he was not paid again by the FBI for several months. Patton Testimony; Donohue Testimony.

20. On November 12, 1996, approximately nine months after Mr. Patton relocated to Dallas, the FBI paid Mr. Patton $30,000.00 as a bonus for Mr. Patton's services to the

FBI for the concluded Los Angeles, CA Investigation. Patton Testimony; Donohue Testimony.

21. Mr. Patton signed a receipt for this payment, acknowledging that it was "full and final payment for services rendered" in connection with the Los Angeles Investigation. Receipt for payment of $30,000, listed as Plaintiff's Exhibit 5 ("Receipt"); FBI Memorandum to FBI Headquarters, and others, from the Dallas FBI division, dated November 20, 1996, listed as Defendant's Exhibit 9 (noting Mr. Patton's belief that "this payment was for services provided to the 'California Investigation'").

22. The receipt contained no language of cancellation whatsoever, nor did it reference the 1994 Contract, and did not constitute notice of termination as required by the 1994 Contract. *Compare* Receipt *with Enright v. United States*, 73 Ct. Cl. 416, 54 F.2d 182, 184-85 (1931) (finding notice of termination sufficient where the terminating party "directed the contractor, in writing, to suspend all work and hold up all commitments in connection with the [remaining performance set forth in the contract] . . . [and t]he contractor suspended all work and stopped all accumulation of cost in accordance with said notice.")

23. Based upon his past experiences and course of dealings with the FBI, the requirement in the 1994 Contract that it be terminated in writing, the language of the signed receipt, and Mr. Patton's conversations with the FBI, Mr. Patton did not believe and has never believed that the receipt for the $30,000.00 payment constituted written termination of the 1994 Contract. Telephone Logs (Patton 00068, 69, 100, 118, 120, 122); Def's Ex. 9; Patton Testimony; Donohue Testimony; Ruth Patton Testimony.

24. This belief was well-founded, reasonable, and based upon his prior course of dealing with the FBI, as after he signed the receipt on November 12, 1996, Mr. Patton continued to provide services to the FBI under the 1994 Contract and consistent with his previous work in Dallas, including, but not limited to, meeting with FBI agents regarding one of the FBI's 10 most wanted criminals, traveling to Baltimore, MD to meet with FBI agents regarding certain other investigations, numerous telephone conversations with FBI agents regarding Mr. Patton's expertise in relation to the activities of organized crime, and locating certain criminals to allow the FBI to pursue certain other and additional investigations. Telephone Logs (Patton 00059, 60, 63, 64, 66, 72-73, 74, 78, 79, 80, 81-82, 83, 84, 85, 92, 93-94, 101, 109, 134, 136, 150, 151, 152, 154, 155, 219); Thomas Patton's telephone records, listed as Plaintiff's Exhibit 8 (Patton 0007 (lines 29-32, 38, 41, 44), 9 (line 9), 11 (line 125), 12 (lines 84, 105, 108), 15 (lines 32, 37, 51-54), 17 (line 18), 18 (line 28), 19 (line 55, 62, 63, 81, 82, 84), 20 (lines 170, 177-79), 21 (line 23), 22 (line 89), 23 (lines 132, 133, 135, 151, 154, 166, 168), 25 (lines 52-55, 58, 69-73, 76, 78-81, 83), 26 (lines 48, 50), 28 (lines 69, 75-78, 83, 87, 95), 30 (lines 39, 43, 45, 54-57), 31 (line 118), 33 (lines 82, 83, 85, 89, 92, 94-96, 98, 99, 101, 104, 106, 116, 117), 35 (lines 52-56, 66, 68, 69, 78, 79, 81-84), 36 (lines 6-8, 11), 37 (lines 63, 64, 66, 68, 73, 74, 80-82, 88, 90, 91, 93, 95, 97), 38 (lines 65-67, 70, 73, 74, 78, 80-82), 39 (lines 28-30, 36-41, 43-45, 48-56, 60, 62), 40 (lines 9, 10), 41 (line 40), 42 (lines 38, 40, 41, 43, 44, 53, 56, 58-60), 43 (lines 82, 84-86, 88, 89, 91, 93-99, 101, 102, 105-109), 44 (lines 5-7, 16, 17, 30, 31), 45 (lines 63-68), 46 (lines 44, 46, 50, 51, 54-56, 58-67, 70-80), 47 (lines 34, 41, 48-53, 56), 48 (lines 28, 30, 33), 49 (lines 3, 7-9, 11-14), 50 (lines 66-74), 51 (lines 15,

16, 19-21, 50, 51, 54, 63, 76), 53 (lines 4, 5, 13, 14), 54 (lines 49, 54, 55), 55 (line 69), 56 (lines 34, 41, 48-53, 56), 173 (lines 76, 77), 174 (lines 64, 65), 175 (lines 69, 70), 176 (lines 11-16), 177 (lines 49, 54-56), 178 (line 3), 182 (lines 7-9, 11-16, 18-25, 28, 29, 31, 32, 34); USAir passenger ticket and baggage check for Thomas Piazzi (a/k/a Thomas Patton), listed as Plaintiff's Exhibit 9; Email and attached picture of William "Cherry Nose" Brown sent from SA Chuck Goodwin of the Chicago FBI office to Thomas Patton on November 2, 2001, listed as Plaintiff's Exhibit 10; Patton Testimony; Donohue Testimony; Ruth Patton Testimony.

25. Accordingly, even if the FBI intended to terminate the 1994 Contract without giving Mr. Patton explicit written notice, especially when construing the language of the contract against the FBI as the drafting party as contract interpretation rules require, *Connor Bros. Constitutional Co., Inc. v. United States*, 65 Fed. Cl. 657 (2005), the FBI's unexpressed unilateral intent to terminate the contract was insufficient to do so, and its continued contact, communications with and utilization of Mr. Patton's services, which he continued to provide directly, and on a stand-by basis, render the FBI liable for payment of additional unpaid amounts, with interest, under the 1994 Contract. *See Firestone Tire & Rubber Co. v. United States*, 195 Ct. Cl. 21, 444 F.2d 547 (1971) (holding that "[t]he unexpressed, subjective unilateral intent of one party [in interpreting the requirements of a contract] is insufficient to bind the other contracting party, especially when the latter reasonably believes otherwise.")

26. Despite continuing to retain Mr. Patton's services, the FBI ceased paying him on a monthly basis but did pay him for some expenses, prompting Mr. Patton to complain to various FBI agents and eventually to submit several letters to Mr. Jack Cordes of

the FBI on April 19, 1999, seeking, among other things, payment consistent with the parties' obligations under the 1994 Contract. Patton Testimony.

27. Subsequently, Mr. Cordes denied all of Mr. Patton's various claims, resulting in the filing of this action on March 21, 2001. Patton Testimony.

28. The obtaining by the FBI of a receipt from Mr. Patton for the $30,000 bonus payment does not constitute the required written termination of the 1994 Contract.

29. It was not until July 24, 2002 that the FBI actually issued a written notice of intent to terminate the 1994 Contract in writing, by sending a letter from Mr. Cordes to Mr. Patton. Letter from Jack R. Cordes, Jr., Chief Contracting Officer for the FBI, to Thomas Patton, dated July 24, 2002, listed as Plaintiff's Exhibit 11.

30. The Court accordingly finds the 1994 Contract to be valid and enforceable, and that it was not terminated until July 24, 2002, thereby entitling the Plaintiff, Thomas Patton, to an award and judgment for the unpaid amounts due under the contract, with interest at the legal rate, in the amount of $798,711.68. Damages calculation chart, listed as Plaintiff's Exhibit 12.

Dated: October 4, 2006

Respectfully Submitted,

HEIDEMAN NUDELMAN & KALIK, P.C.
1146 19th Street NW
Fifth Floor
Washington, DC 20036
Telephone: 202.463.1818
Telefax: 202.463.2999

By: *__/s/ Richard D. Heideman __________*
Richard D. Heideman

Attorney for Thomas Patton